IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | Cause No. CR 08-51-GF-BMM |
| Plaintiff, | |
| vs. | ORDER |
| ANTHONY FRANCIS BOOK, | |
| Defendant. | |

## BACKGROUND

Anthony Francis Book moved the Court to reduce his sentence under 18 U.S.C. § 3582(c)(1)(A)(i). (Doc. 75.) Book is currently serving a sentence of 300 months for conspiracy to possess with intent to distribute methamphetamine. (Doc. 35.) Book has served approximately 169 months of his sentence. *See* (Doc. 85 at 4.) Book's scheduled release date is September 19, 2029. *See* Inmate Locator, www.bop.gov/inmateloc (accessed May 10, 2022).

Book is currently incarcerated at Sandstone FCI. *Id.* Sandstone FCI is operating at a Level 3 Modified Operational Level as a result of a nationwide surge

1

of COVID-19 cases resulting from the Omicron variant. *See* Modified Operational Levels, www.bop.gov/coronavirus/ (accessed May 10, 2022). Sandstone FCI has had 561 inmates and 62 staff member COVID-19 cases throughout the course of the pandemic. *See* COVID-19 Cases, www.bop.gov/coronavirus/ (accessed May 10, 2022).

## I.   Availability of Relief Under 18 U.S.C. § 3582

The First Step Act amended the United States Code to "promote rehabilitation of prisoners and unwind decades of mass incarceration." *United States v. Brown*, 411 F. Supp. 3d 446, 448 (S.D. Iowa 2019). The First Step Act amendments to 21 U.S.C. § 841(b)(1)(A) and 18 U.S.C. § 3582(c)(1)(A) prove especially relevant to Book's motion.

Where, as here, a motion for a sentence reduction is well taken, the Court may modify a term of imprisonment following a finding that "extraordinary and compelling reasons warrant such a reduction." *Id.* When deciding whether to reduce a sentence, the Court must consider the factors set forth in 18 U.S.C. § 3553(a), and whether the reduction proves "consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(1)–(2).

Congress has not defined those circumstances that rise to the level of "extraordinary and compelling," except to say that "[r]ehabilitation of the defendant alone" is insufficient. 28 U.S.C. § 994(t); *Brown*, 411 F. Supp. 3d at 448. The law

instead directs the Sentencing Commission to issue a policy statement in which it describes "what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t); Brown, 411 F. Supp. 3d at 448.

The relevant Sentencing Commission policy statement lies in USSG § 1B1.13, titled Reduction in Term of Imprisonment Under 18 U.S.C. § 3582(c)(1)(A) ("Policy Statement"). Notably, the Sentencing Commission has not amended the Policy Statement since passage of the First Step Act. *See United States v. Haynes*, 456 F. Supp. 3d 496, 507 (E.D.N.Y. 2020); *Brown*, 411 F. Supp. 3d at 448. A number of district courts have noted the unlikelihood of the Sentencing Commission updating the Policy Statement in the foreseeable future, as the Sentencing Commission requires four voting Commissioners to adopt a proposed amendment, and currently has only two voting Commissioners. *See, e.g., Haynes*, 456 F. Supp. 3d at 510 n.20; *Brown*, 411 F. Supp. 3d at 449 n.1; *United States v. Cantu*, 423 F. Supp. 3d 345, 347–48 n.1 (S.D. Tex. 2019); *United States v. Maumau*, No. 2:08-cr-00758-TC-11, 2020 WL 806121, at *1 n.3 (D. Utah Feb. 18, 2020); *United States v. Fox*, No. 2:14-cr-03-DBH, 2019 WL 3046086, at *3 (D. Me. July 11, 2019); *United States v. Handerhan*, No. 110-CR-00298, 2019 WL 1437903, at *1 n.4 (M.D. Pa. Apr. 1, 2019).

The "Commentary" to the Policy Statement lists five "Application Notes," the

terms of which evidence the Policy Statement's inapplicability to the amended § 3582(c)(1)(A). *See* USSG § 1B1.13 n.1–5. Note 1 lists those circumstances that qualify as "extraordinary and compelling," including the defendant's medical condition, age, family circumstances, and "Other Reasons." *Id.* n.1(A)–(D). The "Other Reasons" subdivision to Note 1 provides as follows: "As determined by the Director of [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." *Id.* n.1(D) (emphasis added). Notes 4 and 5 likewise "speak plainly to the BOP's exclusive gate-keeping authority pre-[First Step Act]." *Haynes*, 456 F. Supp. 3d at 508. Note 4 provides, for example, that a "reduction under this policy statement may be granted only upon motion by the Director of the [BOP] pursuant to 18 U.S.C. § 3582(c)(1)(A)." USSG § 1B1.13 n.4 (emphasis added).

The pre-First Step Act Policy Statement does not account for amendments to § 3582(c)(1)(A), namely, removal of BOP's sentinel authority over sentence reduction petitions and extension to defendants of the right directly to move for a sentence reduction. *See United States v. Beck*, 425 F. Supp. 3d 573, 579 (M.D.N.C. 2019). The Policy Statement instead contemplates only motions filed by the BOP Director. *Id.*; *see also* USSG § 1B1.13.

When the First Step Act's amendments of § 3582(c)(1)(A) became effective,

a split in authority emerged over whether the Policy Statement at USSG § 1B1.13 remained "applicable" to § 3582(c)(1)(A) motions directly filed by defendants. *See Beck*, 425 F. Supp. 3d at 579 (quoting § 3582(c)(1)(A)(i)'s requirement that a court's sentencing reduction must be "consistent" with any "applicable" policy statements); *Cantu*, 423 F. Supp. 3d at 351 ("Given the changes to [§ 3582(c)(1)(A)], the policy-statement provision that was previously applicable . . . no longer fits . . . and thus does not comply with the congressional mandate that the policy statement must provide guidance on the appropriate use of sentence-modification provisions under § 3582." (emphasis in original)); *Haynes*, 456 F. Supp. 3d at 511–13 (citing "at least twelve" other federal district courts that have held the Policy Statement's "extraordinary and compelling reasons" list to be unexhaustive for defendants' direct sentence reduction motions).

The Ninth Circuit subsequently issued its decision in *United States v. Aruda*, 993 F.3d 797 (9th Cir. 2021). The *Aruda* decision makes clear that the Policy Statement at USSG § 1B1.13 "is not an 'applicable policy statement' for 18 U.S.C. § 3582(c)(1)(A) motions filed by a defendant." 993 F.3d at 801. Where a court considers a sentence reduction motion directly filed by a defendant under the First Step Act, the substantive standards for what may qualify as extraordinary and compelling expand beyond the bounds of guidance provided in USSG § 1B1.13's Policy Statement Application Notes. *United States v. Aruda*, 2021 WL 1307884, at

5

*4 (9th Cir. Apr. 8, 2021); *see also Haynes*, 456 F. Supp. 3d at 511–13; *Cantu*, 423 F. Supp. 3d at 350–52; *Beck*, 425 F. Supp. 3d at 578–80 (M.D.N.C. 2019); *Brown*, 411 F. Supp. 3d at 451.

Although the Policy Statement may provide helpful guidance, *see United States v. Booker*, 543 U.S. 220, 245 (2005), "it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i)." *Beck*, 425 F. Supp. 3d at 579; *see also United States v. McCoy*, 981 F.3d 271, 282 n.7 (4th Cir. 2020). The Court will look to additional considerations outside those listed in the Policy Statement to determine whether extraordinary and compelling circumstances compel a reduction in Book's sentence.

## II. Whether Book has Demonstrated Extraordinary and Compelling Reasons

Despite this Court's determination that it has discretion to provide relief, Book still must demonstrate that extraordinary and compelling reasons support a reduction of his sentence. *Maumau*, 2020 WL 806121, at *5. Book has cited in support of his motion the COVID-19 pandemic and the fact that neither of Book's predicate drug offenses that triggered a potential life sentence qualify as "serious drug felonies" pursuant to the new definition contained in the amended § 841(b)(1)(A). (Doc. 85 at 8.) Section 841(b)(1)(A) defines "serious drug felonies" as those that entailed a term of imprisonment of more than 12 months. (Doc. 85 at 7, 8.) Book served only

probationary supervision for both convictions. *Id.* Book argues that if he had been sentenced pursuant to the amended statute, he would not have been eligible for the sentencing enhancement under § 851. (Doc. 85 at 8.) Taking into account the changes under the § 851 enhancement, Book argues that he would have received guideline range of imprisonment of 108 to 135 months instead of 300 months. (Doc. 85 at 8-9.)

Book next points to the 2014 Amendment 782 to the U.S. Sentencing Guidelines § 2D1.1. (Doc. 85 at 9.) This amendment lowered the guideline range of imprisonment by two levels based on drug quantity. *Id.* Book contends that his guideline range under the Amendment 782, calculated after the reduction in the guideline sentence pursuant to the changes of the enhancement in § 851, would be 87 to 108 months. *Id.* Book further cites the decision in *United States v. Lopez*, 998 F.3d 431 (9th Cir. 2021), and its discussion of a number of "extraordinary and compelling reasons" to grant a motion for compassionate release. (Doc. 85 at 10.) Book argues that his safety valve eligibility constitutes one of the many compelling reasons to grant compassionate release in this case. *Id.*

The Court determines that extraordinary and compelling reasons exist to reduce Book's sentence, but not to grant Book's motion for compassionate release effective immediately. The Court determines that Book has not demonstrated an extraordinary and compelling need for his immediate release with respect to his

arguments regarding his eligibility for a life sentence under § 851, Amendment 782, or the *Lopez* decision. With respect to Book's concerns regarding the COVID-19 pandemic, the Court consistently has noted that correctional facilities create a high-risk environment for the spread of COVID-19, which poses a particular danger to prisoners with pre-existing conditions. *See For People Living in Prisons and Jails*, Ctrs. for Disease Control & Prevention, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/living-prisons-jails.html (Accessed May 10, 2022). A prisoner's history of substance abuse, when considered alongside the heightened risk of contracting COVID-19 in a prison setting, can constitute an extraordinary and compelling reason for compassionate release. *United States v. Matthews*, 577 F.Supp.3d 1057, 1065 (E.D. Cal. 2021). Book previously contracted COVID-19 while incarcerated (Doc. 85 at 13) and remains at risk of contracting the disease again. *See* COVID-19 Cases, www.bop.gov/coronavirus/ (accessed May 10, 2022). (indicating active cases at the time of filing).)

It is impossible to surmise exactly how likely Book is to become ill again, but recent studies indicate that there are significant chances of a person developing long-term health impacts after contracting COVID-19. *See* Maxime Taquet et al., *Incidence, co-occurrence, and evolution of long-COVID features: A 6-month retrospective cohort study of 273,618 survivors of COVID-19,* PLOS Medicine, Sept. 2021. *See* COVID-19 Cases, www.bop.gov/coronavirus/ (accessed May 10,

2022). Book's vaccinated status will provide some measure of protection, but the longer he remains in a confined facility, the longer he remains at higher risk. The Court determines that COVID-19 poses a continued risk to Book's health. In light of the Covid-related concerns for Book's health, combined with the extraordinary and compelling reasons argued by Book, the Court will reduce Book's sentence to 228 months.

Reducing Book's sentence to 228 months comports with the 3553(a) sentencing factors. Book had a criminal history category of three. (Doc. 35.) Book served probationary sentences for his two previous drug-related convictions. (Doc. 85 at 8.) Book's total offense level was calculated to be 29 based on the quantity of methamphetamine. The Court has applied sentences in cases similar to Book's reduced sentence where the defendant has prior felony drug offenses and has plead guilty to conspiracy to possess with intent to distribute methamphetamine in quantities similar to Book. *See, e.g.*, *United States v. Griner*, 4:14-cr-96-BMM-9, Doc. 710 (63 months); *United States v. Mitchell*, 4:18-cr-21-BMM, Doc. 34 (78 months); *United States v. Sharp*, 4:15-cr-54-BMM, Doc. 32 (68 months).

Accordingly, **IT IS ORDERED**:

Book's motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i) is **GRANTED, IN PART, AND DENIED, IN PART**. The Court reduces Book's sentence to 228 months to be followed by five years of supervised release.

DATED this 11th day of May, 2022.

_____
Brian Morris, Chief District Judge
United States District Court

10